If it pleases the Court, my name is Randy Rumpf. I represent the appellant Margaret Kurtz. It is my intent to reserve at least two minutes for rebuttal. This case presents one issue squarely before you, an issue that has never been decided by any circuit court of appeals in this country that I can find. And that issue is, if an employee deflects a sexual advance made by a supervisor, is that conduct protected under the anti-retaliation provision of Title VII found in 42 U.S.C. 2003? A number of district courts have addressed that. Let me stop you there, because where's the sexual advance? I mean, there's no evidence of an actual sexual advance, so it's sort of like an anticipatory deflection. Right. But that's – and that's the whole – the point that we make in our brief. We argued that there was an anticipatory sexual advance, but the perception of the supervisor was that. The key issue here, and this was ignored by the trial – or by the court below, was the perception theory that we advanced below. The perception theory says if an employer perceives conduct that is protected, even though the conduct didn't occur or was not protected, then that is still actionable. And in this case, there was substantial evidence that we placed in the record below that my client's supervisor perceived her conduct as deflecting a sexual advance or a potential sexual advance by him. Where's the evidence of the perception theory? Where's the evidence that that perception took place? The evidence comes from the testimony of Robert Leone, who was Mr. Caldwell's supervisor. We took his deposition, and what did he say? He said that Mr. Caldwell indicated to him at the time of the Laughlin incident that he was very upset and angry because he perceived that my client taking her husband to Laughlin with him was an attempt to avoid him hitting on her. He was perceived and he was disturbed because such an accusation came to him, and he indicated his complete innocence. And is that the type of perception that you base your case on? No. Well, he perceived that she was attempting to deflect or prevent him from hitting on her. Is that what he said? Yes. That's what's in the record. That's what he testified to in his deposition. I thought he said that he was hurt because of any such accusation that would be made. That's right. But he perceived that she was attempting to deflect that. Whether or not it happened, he said, I believe the substance was that Margaret believed that I wanted her to come alone to Laughlin so that I could behave inappropriately towards her in a sexual manner. Inappropriate behavior in a sexual manner from a supervisor to a subordinate and attempt to deflect that is protected, whether it's anticipated or not. That's what the Black case said. There's no evidence that that took place. He was saying that he's disturbed, that she would believe this, but he's saying also there's no reason for it, and she didn't believe it, and she said she didn't believe it, and she brought her husband along because it would look better. It doesn't matter under the perception theory. For instance, did anybody believe he was trying to hit on her? My client did indicate that, yes. She said that she thought he really was going to hit on her, or was she concerned about other people thinking that something improper was going on? The record is as follows. Originally, she said, I wanted to avoid the appearance of impropriety. Then he reacted in such a manner that I told my husband about it, who happens to be an attorney. My husband told me this could be sexual harassment. That raised some antennas in her head. When he reacted the way he did, she indicated, and it's in the record, I became very concerned that that may have been his true motive, and actually he told her we're going to be there for two days and three nights. After she brought her husband, he left after one day. He didn't even spend the night. So there were some indications in her mind. But again, under the perception theory that we've cited, there are cases where a plaintiff has not engaged in any conduct, any conduct whatsoever, and the employer thinks they have, and they've said that is protected. When you misperceive conduct, and that's what happens here, he perceived her conduct as attempting to deflect an advance by him. Whether there was one or not doesn't matter. No. Well, he – see, I don't see any evidence of that, because there's no evidence that he or anybody else thought he was going to hit on her. What we got here is this appearance of impropriety, which kind of plagues us, the sense that maybe somebody over there might think something's going on between us, and I don't want that person to get the impression. But that's another step, at least one other step, further removed from perception of something that violates the equality statutes. Well, she indicated that he had traveled alone with another subordinate overnight to Laughlin. They had traveled in the same car. He had recently broken up with his girlfriend. All of these indications led her – and his reaction to her indication that she was bringing her husband, his angry reaction to that led her to believe that. But again – Her angry reaction is a step later. That's not the reason that – I mean, that's her later inference, which may be convenient for the lawsuit, may be brought about by any sorts of things, but has nothing to do with her proposal to bring her husband. Because her testimony was that she didn't really think it was going to happen. She was concerned about the impression of impropriety in other people's eyes. No, that's not – with all due respect. Is that what she said? She said, initially, I didn't think it was going to happen. That's right. But that's when she did it. After that, after that, it wasn't only until after she saw his reaction that she began to think, well, maybe he was going to do something. But that can't be used to explain what she said to him because she didn't think about that until afterwards. No, she thought about that before bringing her husband. That's what – she thought about that. And that's in the record. That's in her declaration. Before this whole incident is when that happened. She tells him, I'm bringing my husband. He reacts negatively. Before she even brings her husband, she goes to her husband and says, this could be sexual harassment. She starts evaluating other factors. He just broke up with his girlfriend, et cetera. Well, you know, after her husband, who's a lawyer, says you may have a sexual harassment cause of action, and she starts thinking of things to support the cause of action, I mean, that's a little hard to look at as explanation for the behavior of the parties here. He didn't say that, Your Honor. With all due respect, the evidence was he said this may be sexual harassment. And so that's when they decided he would go. But before the conduct – again, the perception theory focuses on what is in the employer's mind, not what's in her mind. The point is – and that's where I believe, Your Honor, is missing the point. What was in Mr. Caldwell's mind, not what was in her mind? When? When? When she – okay. Let me ask you another question. What is there? Let's just assume, arguendo, that he was annoyed because he thought that there was something in her mind that suspected him of wanting to hit on her by getting her alone. What is there that relates that to what eventually happened to him? Well, there's direct evidence of a retaliatory motive. We presented that direct evidence in our brief. He became very angry over it. We had testimony from an HR representative, from his supervisor, Mr. Leone. HR even wrote him a memo that said, We know you're very angry over this, but you cannot retaliate against her. Immediately within one month after this, he started sending her negative emails about her conduct. Two months later, he verbally reprimanded her. The timing of that under Pasatino, that alone presents it. But we have presented direct evidence that his anger at her – at that protected conduct, or his perceived protected conduct, was a reason. There was direct evidence in the record of that. If he's angry over protected conduct, that's direct evidence of a retaliatory motive. So we presented direct evidence of that. What employer do we look at to see whether there's a perception? Which person in this case? It was Caldwell. How about his boss, Munch? Munch, we didn't have any evidence that she perceived that, other than the timing of her reaction and the speciousness of her discipline of my client. Munch, as a matter of fact, we didn't have any evidence. There's evidence exactly the opposite, because he contacted your client and asked specifically whether or not she felt harassed by all of this. She indicated she relied on Mr. Caldwell. I would like to reserve the remaining time for rebuttal. Okay. Good morning. May it please the Court. Roger Granginet of Littler Mendelson on behalf of Caesars Entertainment, Inc. I'd like to first address the district court's order granting summary judgment in this case. The district court found that there was no protected activity in this case, and no matter how far you stretch your imagination, there was no protected conduct here. Under the retaliation provision of Title VII, there has to be an opposition to an unlawful employment practice. And opposing counsel keeps bringing up matters that go back after the plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission, but that's not the protected activity, the alleged protected activity at issue in this case. I'm sorry? Was the perception theory advanced to the district judge? When you mean advanced, are you saying it was argued? Yes. It was set forth in the opposition to the motion for summary judgment. And the district judge decided what? District court decided that the plaintiff had not engaged in protected activity. Well, did the district judge specifically address the perception theory? No, he did not. So now we come up before us, and it's the major argument of counsel that the perception theory wins this case. The district judge has never specifically passed on it. Well, there's other – there's support in the record that if the perception theory was the law of the land here, there's support in the record that it wouldn't have any application to these undisputed facts. I understand your argument on that. My question is whether the district court has passed upon this particular issue. And if not, is the reason because the district judge made a mistake or because it wasn't cited as an issue and advanced to the district judge? It was an issue advanced before the district judge. Wait. I thought you said it was – I thought you said it came as a response. It was in opposition to – it was raised for the first time in opposition to the defendant's motion for summary judgment, the perception theory. And it was a secondary argument, if you will. The focus – So my question to you is – and I don't have a position on this, but we ought to know yours – if this turns out to be the key to the case, as you could infer from what – how counsel made the argument, why shouldn't we send this back for the Because there – there's support in the record showing that there was no perception by anyone at Caesars, Inc., Entertainment, Inc., that the plaintiff was engaged in protected activity. This should end the matter right here. The plaintiff told – There was a communication that you can't retaliate. Now, that may have been done out of caution, but at least someone had the sense that, you know, if somebody strikes back in response to this situation, it could constitute unlawful retaliation. Correct. That happened in December of 2002, and that was subsequent to the company's investigation and to – subsequent to when the plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission. The Nevada Equal Rights Commission complaint – or charge, I should say – that's not the issue here. In the complaint and throughout the case, the alleged protected activity occurred during this Laughlin trip, this business trip to Laughlin. So any of this evidence set forth by the plaintiff regarding the perception, the alleged perception of any one of Cesar's that the plaintiff engaged in protected activity, it was subsequent to that charge. And that charge is not – this is not a participation case. This is an opposition case. The plaintiff – and I want to go back to the – what the record says on – with regard to the issue about whether or not anyone from Cesar's perceived the plaintiff to be engaging in – or, excuse me, anyone perceived that she was making a – and this is how it's been formulated the whole time – a complaint of sexual harassment. Right at the time of the Laughlin trip, she was – she talked to Debbie Munch, and she told Debbie Munch that nothing inappropriate between herself and Michael Caldwell ever happened. And she was directly asked, do you feel sexually harassed? No. The record – if you look in the supplemental excerpts of the record under Debbie Munch's deposition testimony, she testified that she told Michael Caldwell that she brought that issue up, and she told Mr. Caldwell what the plaintiff's response was. No sexual harassment. You heard the argument of counsel. He says it's not Munch we look at. It's Caldwell, his employee, that we look at. Right? And then he argues that when this accusation was made, that there's evidence because of how he responded to the accusation that there was a perception that he was taking her down to Laughlin for sexual reasons. That's his argument. What's wrong with that argument? That is, we look only at Caldwell. We don't look at Munch. Munch cuts him out. We only look at Caldwell. Even if you look at Caldwell, isolate him. No, no, I'm not saying you only look at Caldwell. No, I'm just saying – I'm just saying – I understand, but even if you do that, she told him that she wanted her husband down there to avoid the appearance of impropriety. That was it. And this anger and this reaction that Michael Caldwell had in response to that, the only response to that, his response to that, was because her husband was a political candidate and Caesars has certain obligations with regard to political contributions. And so if you look at Mr. Caldwell's email after the plaintiff told him that she wanted her husband to accompany her on the trip, all he asked about is the fact that her husband's running for political office and the room shouldn't be comped to a political candidate. And no one prevented her husband from coming. He did. So there's – even if you isolate – There is evidence that he had a negative reaction. Being insulted by something like that is a whole different story than perceiving that someone made a sexual harassment complaint against her. He wasn't insulted because of this thing about her husband running for office. Right. The insult that he apparently felt or the reaction that he had, as described by others, came because of the suggestion that there – he might have something untoward in mind. He might make advances toward her. There might be something going on between them. He's reacting to that. Now, isn't that in some fashion reacting to a suggestion that he might be hitting on her? No, I don't believe so. I think what you're saying to what the plaintiff is arguing in this case, that the perception was that she engaged in protected activity by making a sexual harassment complaint. No, no. Wait. This gets so confusing because we have these – all these perceptions on top of perceptions. And we're talking also about anticipation. Yeah. With nothing in the record that supports that. Let's just assume. Let's go back to where your – where your adversary started out. Let's just assume that he did become annoyed because he thought that – she thought that he might hit on her. I don't see how that is a perception of protected activity. I don't either. If he – that's just something that happens a lot of times where there's a misunderstanding between employees, where she says, I want to avoid the appearance of impropriety, which is not protected conduct. He says, I wonder if he – she's – the impropriety is she thinks that somehow I might do something, and that's not – that's not accurate. But that's not – that's not the same as a perception that she is trying to avoid harassment. Right. Or making a sexual harassment complaint. I agree on that. What I want to end with was, you know, it's kind of disturbing that, you know, in this particular case that Mr. Colwell was, let's say, suspected of possibly sexually harassing someone just because he broke up with his girlfriend recently and because he had recently taken a business trip with a female subordinate in the past. Nothing unlawful – no unlawful practice about taking a business trip with a subordinate male or female. Could I ask you in your last ten seconds – Yes. I don't quite understand the perception theory. It's a little like grabbing mud. It keeps going through my fingers. I can't get a hold of it. When we're looking at determining the perception theory, it's whose perception, and then apply that to this case. Well, I'll start off by responding to that by saying the Ninth Circuit has not adopted this rule. The only particular circuit that has adopted it, I believe, is the Third Circuit, and that was in the ADA type of case. The other case is cited by the plaintiff or FLSA or OSHA cases. But even if you look at whose perception you're talking about, if the rule was applied, if the theory was applied, Michael Caldwell or Debbie Munch, it doesn't matter. Neither one of them had the perception that the plaintiff – So it's the perception of the employer, right? Yes. And we identify any representative of the employer who has information? I don't know the answer to that question. I'm just responding to what the plaintiff's argument is. Okay. Thank you. Thank you. It's a little illusory. Very briefly, the statute in question protects employees who oppose any practice made an unlawful employment practice by the subchapter. A supervisor hitting on a subordinate is unlawful under that subchapter. The cases we've cited, the majority of all the district court cases that have addressed that have said that. Fending off a sexual advance is protected. Mr. Caldwell interpreted in his mind my client's conduct as fending off a sexual advance. That's the perception theory. The perception theory deals with what's going on in Mr. Caldwell's mind, and this Court adopted that in the Amos case. Fending off a possible sexual advance because it was a man – and this is as much as far as you can take it – that a man has asked a female employee to travel with him on business, she says, I'd rather have – I want my husband with me to avoid this perception of impropriety. There is no basis for assuming there that she is trying to fend off sexual harassment. That's the problem. Even giving you the benefit of the doubt that that's what was going on, that's not protected conduct, and it's not a perception of protected conduct. Well, but you're going to the reasonable basis of my client, which deals with act – No. I'm going to what she said. And that – and that goes to the actual violation of the statute. Basis for the employee. And you're avoiding what's going on in Mr. Caldwell's mind, because under the perception theory, what my client's thinking doesn't matter. What matters is what Mr. Caldwell was thinking. If Mr. Caldwell says, I didn't do it. Everybody in the world knows I'm pure, and this is ridiculous, then that means there's a perception. Because he rejects the idea, that means there's a perception? No. What he – No. He thought that she was doing this to prevent him from hitting on her. So he perceived that. It's what is going on in Mr. Caldwell's mind is the key. He never hit on her before. No. Again, you're – Okay. You're focusing on what's going on in my client's mind, and the key to the perception theory is what's going on in his mind. No. It's what he could have perceived was going on in her mind, I think, is maybe the most that you can – That's not what this Court held in Amos. That's not – Okay. Because in Amos, it adopted the perception theory. Okay. Where they thought someone was American Indian when he was white. Right. The case just argued is submitted for decision. And we'll hear the next case, which is Braddock v. Clark County. Good morning, Your Honors. May it please the Court, Kirk Kennedy.
judges: Wallace, Schroeder, Clifton